## ST. LOUIS, KENNETT & SOUTHEASTERN RAILROAD CO. *v.* UNITED STATES ET AL.

### APPEAL FROM THE COURT OF CLAIMS.

No. 229. Argued January 23, 1925.—Decided March 2, 1925.

1. A railroad company in a contract with the Director General of Railroads expressly accepted the covenants and obligations of the latter and the rights arising thereunder " in full adjustment, settlement, satisfaction, and discharge of any and all claims and rights

----

at law or in equity, which it now has or hereafter can have against the United States, the President, the Director General or any agent or agency thereof by virtue of anything done or omitted, pursuant to the acts of Congress herein referred to," viz., the Federal Control Act, the Act of Aug. 29, 1916, c. 418, 39 Stat. 645, and the Joint Resolutions of April 6 and December 7, 1917, 40 Stat. 1, 429. *Held*, that a claim of the railroad under § 3 of the Federal Control Act for a deficit in operating income, etc., previously incurred under federal control, was settled and released by the contract, and that allegations in the company's petition denying this effect and intention were mere conclusions of law, not admitted by demurrer. P. 348.

2. Ordinarily, the defense of release, or accord and satisfaction, must be pleaded in bar; but where the fact appears either in the body of the petition or from an exhibit annexed, the defense may be availed of on demurrer. P. 350.

3. The agreement was within the authority of the Director General. *Id.*

58 Ct. Clms. 339 affirmed.

APPEAL from a judgment of the Court of Claims dismissing the petition on demurrer.

*Mr. S. S. Ashbaugh,* with whom *Mr. G. B. Webster* was on the brief, for appellant.

*Mr. Sidney F. Andrews* and *Mr. A. A. McLaughlin,* with whom *Mr. Solicitor General Beck* was on the brief, for the United States.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

This is an appeal from a judgment of the Court of Claims which dismissed the petition on demurrer. The plaintiff owns a short-line railroad which it operated, but which is alleged to have been under federal control from January 1 to July 1, 1918. The suit was brought to recover, for that period, amounts representing the deficit in operating income, under maintenance of way and equipment charges, and the rental value of the property,

which are claimed under § 3 of the Federal Control Act,
March 21, 1918, c. 25, 40 Stat. 451, 454. There was an-
nexed to the petition as an exhibit the copy of a contract
between the plaintiff and the Director General of Rail-
roads, dated February 26, 1919. It deals, in the main,
with the mutual relations of the parties for the period
after July 1, 1918, but section 3 of the contract provides
as follows:

". The Company . . . expressly accepts the cove-
nants and obligations of the Director General in this
agreement set out and the rights arising thereunder in full
adjustment, settlement, satisfaction, and discharge of any
and all claims and rights at law or in equity, which it now
has or hereafter can have against the United States, the
President, the Director General or any agent or agency
thereof by virtue of anything done or omitted, pursuant
to the acts of Congress herein referred to.

" This is not intended to affect any claim said Company
may have against the United States for carrying the mails
or for other services rendered not pertaining to or based
upon the Federal Control Act."

.The acts of Congress referred to in the contract were
the Federal Control Act, the Act of August 29, 1916, c.
418, 39 Stat. 619, 645, and the Joint Resolutions of April
6, 1917, and December 7, 1917, 40 Stat. 1, 429. The
Government assigned as a ground of demurrer that the
copy of the contract annexed to the petition showed that
the claims sued on had been settled and that the United
States had been released from any liability to the plain-
tiff.

The petition alleges, among other things, " that section
3 thereof does not contain and was not intended to con-
tain any receipt or acknowledgment of any consideration
by or in favor of the plaintiff for the use of said railroad
property during said six months from January 1 to July
1, 1918;" that the section refers only to other provisions;

and that the " plaintiff gained nothing by the execution of this contract, and by it no rights were lost." The contention is that these allegations are admitted by the demurrer; and that for this and other reasons section 3 can not properly be construed to apply to claims of the character of those sought to be recovered, because these " did not arise out of the contract or because of anything contained in it." The allegations in the petition as to the meaning, application and effect of section 3, being conclusions of law, are not admitted by the demurrer. *United States* v. *Ames,* 99 U. S. 35, 45; *Chicot County* v. *Sherwood,* 148 U. S. 529, 536; *Equitable Life Assurance Society* v. *Brown,* 213 U. S. 25, 43. The legal effect of the instrument remains that which its language imports. *Interstate Land Co.* v. *Maxwell Land Grant Co.,* 139 U. S. 569, 578. The contract here in question appears to have been carefully drawn. It is the standard form short-line or co-operative contract said to have been executed by more than a hundred railroads.[1] The language employed in section 3 to embody the agreement for settlement and release of claims is so clear and comprehensive as to leave on its face no room for construction. *United States* v. *Wm. Cramp & Sons Co.,* 206 U. S. 118, 128. And we do not find in any other part of the contract any provision which prevents the application of the release clause to the claims here in suit.

There is no contention that the contract as written does not express the actual agreement, nor a prayer that, because of mutual mistake, it should be reformed. The petition contains allegations which indicate that originally it was intended to challenge the validity of the contract because of duress, lack of consideration, and want of power in the Director General to enter into the same.

---

[1] For the form of the cooperative contract, see United States Railroad Administration, Director General of Railroads, Bulletin No. 4 (revised), 1919, p. 80; Report of the Director General, 1924, pp. 36–38.

But the plaintiff's brief declares that the sole question before the Court is whether section 3 of the contract is a settlement or waiver of the claim in suit. And more specifically: " It is not alleged nor now claimed that the contract was wholly and absolutely void because of total lack of consideration, or because the same was executed under forceable and legal duress." Any claim based on a lack of authority in the Director General is clearly unfounded.

There is in the brief a suggestion that the lower court erred in giving effect to section 3 because " the contract was set out as an exhibit to the petition not as a part thereof, but merely for the purpose of showing to the court that the cause of action set out in the petition . . . [was] entirely independent of and arose outside of the contract itself." The suggestion is unsubstantial. Ordinarily the defense of release or accord and satisfaction must be pleaded in bar. But where the fact appears either in the body of the petition, or from an exhibit annexed, the defense may be availed of on demurrer. Compare *Randall* v. *Howard*, 2 Black, 585, 589; *McClure* v. *Township of Oxford*, 94 U. S. 429, 433; *Speidel* v. *Henrici*, 120 U. S. 377, 387.

*Affirmed.*