Campbell, GMef Justice,
delivered the opinion of the court:
The Missouri Southern Railroad Company, operating a short line road from Leeper to Bunker in the State of Missouri, filed its petition for the recovery of two items alleged to grow out of its agreement with the Director Gen *137 eral of Eailroads and one item claimed as compensation for the use of its property during a part of the period of Federal control. The Government has demurred to the petition, and upon the questions thus raised the case is before the court.
It appears from the petition that plaintiff is a common carrier and connects with the Missouri Pacific Eailroad that was under Federal control; that plaintiff was taken under Federal control by virtue of the President’s proclamation under the act of August 29, 1916, 39 Stat. 645, and of the Federal control act, 40 Stat. 451, and not relinquished from such control until some time in June, 1918, and that as provided for in the Federal control act an agreement was entered into between the Director General and the plaintiff, a copy of which is attached to the petition. It is alleged that plaintiff has submitted to the Director General a claim for sums due under the contract, but that he has refused to pay same and that plaintiff after such refusal made application for the appointment of referees, provided for in section 3 of the Federal control act, and that after their appointment the referees dismissed plaintiff’s claim upon grounds stated in their report, a copy of which is attached to the petition. The principal reason for their action was that there was an agreement between the parties, and by its terms the asserted claim was taken out of their jurisdiction. This conclusion was based upon the case of St. Louis, Kennett & Southeastern Railroad Co. v. United States, 267 U. S. 346.
1. The item of claim of compensation for its road from January until June, 1918, is settled by the case just mentioned (267 U. S. 346). The contract there considered is the same in substance and effeet as the contract in the instant case, section 3 (a) being as follows:
“ Section 3 (a) The company accepts the terms and conditions of said Federal Control Act and the terms of this agreement, and expressly accepts the covenants and obligations of the Director General in this agreement set out and the rights arising thereunder in full adjustment, settlement, satisfaction, and discharge of any and all claims and rights, at law or in equity, which it now has or hereafter can have against the United States, the President, the Director General, or any agent or agency thereof by virtue of anything done or omitted, pursuant to the acts of Congress herein referred to. * * * ”
*138 Referring to this clause, the Supreme Court say:
“ The language employed in section 3 to embody the agreement for settlement and release of claims is so clear and comprehensive as to leave on its face no room for construction.”
The release was given effect when presented by demurrer.
2. The largest item of the claim is for what plaintiff describes as its proportion of certain joint rates, which it claims are due under the terms of its contract. Section 5 of the contract provides that all rates, fares, and charges for transportation services performed jointly by the company and any system operated by the Director General “ shall be divided fairly between the Director General and the company ” (plaintiff). The court’s jurisdiction is challenged by the demurrer, the defendant insisting that under section 206 of the transportation act, 41 Stat. 461, this court has no cognizance of the claims. The plaintiff insists that this court has jurisdiction to grant relief under the provisions of the contract itself as a contract between plaintiff and the United States. In the absence of the agreement authorized by section 1 of the Federal control act provision is made by section 3 of that act for compensation and the procedure is stated. See St. Louis, Kennett & Southeastern Railroad Co. case, 58 C. Cls. 339, 340. When, however, an authorized agreement is made, the procedure under section 206 is to be against the Director General, or the agent appointed by the President, which action could be only in the District Court or before the Interstate Commerce Commission that is given jurisdiction by subsection (c). In the case of Wyandotte Terminal Railroad Co., No. E-389, decided by this court December 5, 1927 (64 C. Cls. 329), and in which a writ of certiorari was denied by the Supreme Court, reliance was had upon section 204 of the transportation act. The court said that the right of action conferred by the statute was exclusive. We think the same is true here. It was not contemplated that suits growing out of such contracts' by the Director General could be sued upon as obligations of the United States. The contract provides in section 1 that if differences arise as to any matter arising under it either party may refer the question to the Interstate Commerce Com *139 mission, and that “its decision shall be final and binding.” Provisions of this kind in Government contracts have been frequently enforced. See Gleason case, 175 U. S. 588; Brinck case, 53 C. Cls. 170, 177, and cases there cited.
What has been said disposes also of a small item which the Director General offered to pay and the plaintiff declined.
The demurrer will be sustained and the petition dismissed. And it is so ordered.
Moss, Judgé; Geaham, Judge; and Booth, Judge, concur.