**DENICKE v. BRIGHAM et al.**

No. 10347.

Circuit Court of Appeals, Ninth Circuit.

April 27, 1944.

Aaron M. Sargent, of San Francisco, Cal., for appellant.

Peirce Coombes, of San Francisco, Cal., for appellee Joseph Haber.

Felix T. Smith and Pillsbury, Madison & Sutro, all of San Francisco, Cal., for appellee W. B. Reis.

Thomas A. Thacher and Thacher, Jones & Casey, all of San Francisco, Cal., for appellee R. D. Brigham.

Cyril Appel and Ivores R. Dains, both of San Francisco, Cal., for appellee S. Kahn.

Lloyd S. Ackerman and George H. Johnston, both of San Francisco, Cal., for appellee Leon Sloss, Jr.

Theo. J. Roche and Sullivan, Roche, Johnson & Farraher, all of San Francisco,

Cal., for appellees M. Fleishhacker and M. Fleishhacker, Jr.

Brobeck, Phleger & Harrison, of San Francisco, Cal., for appellee R. S. Dollar.

Norman A. Eisner, of San Francisco, Cal., for appellee Walter E. Buck.

Young, Hudson & Rabinowitz, of San Francisco, Cal., for appellee Herbert Fleishhacker.

Willard L. Ellis, of San Francisco, Cal., for appellee Haas.

Robert M. Searls, of San Francisco, Cal., for appellee Humphrey.

Tobin & Tobin, of San Francisco, Cal., for appellee J. O. Tobin.

Howard Hassard and Hartley F. Peart, both of San Francisco, Cal., for appellee A. B. Swinerton.

Before MATHEWS, STEPHENS, and HEALY, Circuit Judges.

MATHEWS, Circuit Judge.

This appeal is from a judgment of the District Court of the United States for the Northern District of California [1] dismissing for want of jurisdiction an action by appellant, Ernest H. Denicke, against appellees, R. D. Brigham, Samuel Kahn, William B. Reis, Leon Sloss, Jr., Herbert Fleishhacker, Mortimer Fleishhacker, Mortimer Fleishhacker, Jr., Walter E. Buck, R. Stanley Dollar, Walter A. Haas, William F. Humphrey, J. C. McKinstry, Alfred B. Swinerton, Joseph O. Tobin and Joseph Haber, Jr., for damages in the sum of $86,562,[2] with interest and costs.

The District Court's jurisdiction was invoked on the ground that the matter in controversy exceeded, exclusive of interest and costs, the sum or value of $3,000 and arose under the Constitution and laws of the United States.[3] No other ground of jurisdiction was asserted. That the matter in controversy exceeded, exclusive of interest and costs, the sum or value of $3,000 is conceded. The question is whether it arose under the Constitution or laws of the United States.

The amended complaint, hereafter called the complaint, was in three counts. Each count stated, in substance that at all times between May 15, 1924, and June 30, 1932,

appellant was the owner and holder of 202 shares of the capital stock of Anglo-California Trust Company, a trust company located in San Francisco, California, incorporated under the laws of California and carrying on the banking business under the authority of said laws; that Brigham, Kahn, Reis, Sloss, Herbert Fleishhacker, Mortimer Fleishhacker and Mortimer Fleishhacker, Jr., were directors of the trust company; that Buck, Dollar, Haas, Humphrey, McKinstry, Swinerton, Tobin, Herbert Fleishhacker and Mortimer Fleishhacker were directors of The Anglo & London Paris National Bank of San Francisco, a national banking association located in San Francisco; that Herbert Fleishhacker was president of the association and vice president of the trust company; that Mortimer Fleishhacker was president of the trust company and vice president of the association; that Haber was attorney for the trust company and the association; and that on June 30, 1932, the trust company was consolidated with the association, under the provisions of § 34a of Title 12 U.S.C.A., 44 Stat. 1225.[4]

In stating that the trust company was consolidated with the association under the provisions of § 34a, each count of the complaint, in effect, stated that the terms and conditions of the consolidation were agreed upon by a majority of the board of directors of the trust company and a majority of the board of directors of the association, and that the agreement was ratified and confirmed by the affirmative vote of the shareholders of the trust company owning at least two-thirds of its capital stock outstanding, at a meeting held on the call of its directors after notice thereof to each of its shareholders, and by the affirmative vote of the shareholders of the association owning at least two-thirds of its capital stock outstanding, at a meeting held on the call of its directors after notice thereof to each of its shareholders, as required by § 34a. Each count stated, in substance, that, in addition to the notice to the trust company's shareholders, there was mailed to each of them a letter signed by the trust company's president, setting forth the provisions of the agreement. A copy of the agreement

---

[1] Denicke v. Brigham, D.C., 45 F.Supp. 868.

[2] Appellant claimed $36,562 as actual damages, $50,000 as exemplary damages.

[3] Judicial Code, § 24(1), 28 U.S.C.A. § 41(1).

[4] Before the section was amended.

(Exhibit A), a copy of the letter (Exhibit B) and a copy of the notice (Exhibit C) were attached to the complaint and made a part of each count thereof.

The agreement was executed by Brigham, Kahn, Reis, Sloss, Herbert Fleishhacker, Mortimer Fleishhacker and Mortimer Fleishhacker, Jr., as directors of the trust company and by Buck, Haas, Humphrey, McKinstry, Swinerton, Herbert Fleishhacker and Mortimer Fleishhacker as directors of the association.[5] It was not executed by Dollar, Tobin or Haber. It provided, inter alia, that the amount of the capital stock of the consolidated association [6] should be $10,400,000, divided into 520,000 shares of the par value of $20 each, and that—

"Of the capital of the consolidated association, 400,000 shares shall be allotted to the present shareholders of [the association], being four shares of $20 par value for each share of $100 par value now held by them, and 120,000 shares shall be allotted to the present shareholders of [the trust company], being eight shares of $20 par value for each share of $100 par value now held by them."

Thus, in effect, the agreement provided that, if and when the consolidation became effective, each shareholder of the trust company would be entitled to receive, in exchange for each of the shares held by him, eight shares of stock in the consolidated association. However, no shareholder of the trust company was or could be required to accept shares of stock in the consolidated association in exchange for the shares held by him. Each shareholder had the right to give notice that he dissented from the plan of consolidation and the right to vote against the con-solidation; and every shareholder exercising either of said rights was entitled to receive the appraised value of the shares held by him, as provided in § 34a.

Each count stated, in substance, that appellant did not know, and was not informed by appellees, that he had the rights mentioned above; that if he had known that he had these rights, he would have exercised them; that if he had exercised them, he would have received for his 202 shares of stock in the trust company $62,418; that, being ignorant of his rights, he did not exercise them, but accepted, in exchange for his 202 shares, 1616 shares of stock in the consolidated association, which last mentioned shares had a value of not more than $25,856; that he thereby sustained actual damages in the sum of $36,562 ($62,418 less $25,856); and that said damages were sustained through ignorance of his rights.[7]

Thus the gist of the complaint and of each count thereof was that, through ignorance of his rights, appellant sustained damages in the sum of $36,562, and that, having failed to inform him of his rights, appellees were liable for the damages thus sustained. The Constitution of the United States did not, nor did the laws of the United States, make it appellees' duty to inform appellant of his rights. Consequently appellees' liability, if any, for the damages claimed to have been sustained by appellant did not arise under the Constitution or laws of the United States.

Each count stated that, in addition to the $36,562 claimed as actual damages, appellant claimed exemplary damages in the sum of $50,000, "recoverable under § 3294 of the [California] Civil Code." [8] The complaint prayed that appellant have judg-

---

[5] It was also executed by Frank V. Vollmer, Louis Sutter, James K. Tyson, C. L. Smith, T. C. Tilden and Paul Shoup as directors of the trust company and by Daniel G. Volkmann, K. R. Kingsbury, C. F. Hunt, L. C. Pontious, V. Klinker, L. J. Aubert, Benjamin Bloom and Paul Shoup as directors of the association. Vollmer, Sutter, Tyson, Smith, Tilden, Shoup, Volkmann, Kingsbury, Hunt, Pontious, Klinker, Aubert and Bloom were not parties to this action.

[6] Called The Anglo California National Bank of San Francisco.

[7] Each count stated: "The damages claimed under this count are the result of a loss which plaintiff [appellant] sus-tained through ignorance of his legal rights in connection with the consolidation proceedings * * * Plaintiff did not know and had no means of knowledge of the nature or extent of such rights * * * Notwithstanding any fiction of law or technical presumption claimed to arise against him by any construction of [§ 34a], plaintiff did not in fact have any knowledge or means of knowledge of any right or remedy available to him under said section. * * * all acts and things which plaintiff did in that behalf were the result of such ignorance on his part."

[8] Section 3294 provides: "In an action for the breach of an obligation not aris-

ment against appellees for his actual damages ($36,562), with interest thereon, and "for exemplary damages under § 3294 of the Civil Code in the further sum of $50,000." Obviously, appellees' liability, if any, for the $50,000 claimed by appellant as exemplary damages arose under the laws of California and did not arise under the Constitution or laws of the United States.

Appellant's contention that appellees' liability arose under the Constitution and laws of the United States is based on the statement (in count 2 of the complaint) that appellees violated the Fifth Amendment to the Constitution, the statement (in each count of the complaint) that appellees violated §§ 34a and 93 of Title 12 U.S.C.A., and the statement (in count 3 of the complaint) that appellees violated §§ 161, 324 and 501a of Title 12. These were statements of legal conclusions. The conclusions were unwarranted. Appellees could not have violated the Fifth Amend-

ment, for that Amendment relates to governmental action, not to the acts of individuals.[9] The complaint stated no facts warranting the conclusion that appellees violated § 34a, § 93, § 161, § 324 or § 501a. We therefore are not required to accept any of the stated conclusions as correct.[10] We reject them all, but even if we accepted them, it would avail appellant nothing, for the complaint did not show that the damages claimed to have been sustained resulted from the claimed violations. Instead, the complaint showed, as stated above, that the damages claimed to have been sustained resulted from appellant's ignorance of his rights.[11]

We conclude, as did the court below, that the matter in controversy did not arise under the Constitution or laws of the United States, and that therefore that court had no jurisdiction over the subject matter of the action.

Judgment affirmed.

---

ing from contract, where the defendant has been guilty of oppression, fraud, or malice, express or implied, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant."

[9] Corrigan v. Buckley, 271 U.S. 323, 330, 46 S.Ct. 521, 70 L.Ed. 969; National Federation of Railway Workers v. National Mediation Board, 71 App.D.C. 266, 110 F.2d 529, 537; Teague v. Brotherhood of Locomotive Firemen and Enginemen, 6 Cir., 127 F.2d 53, 56. See, also, Barron v. Mayor and City Council of City of Baltimore, 7 Pet. 243, 247, 8 L.Ed. 672; Fox v. State of Ohio, 5 How. 410, 434, 12 L.Ed. 213; West River Bridge Co. v. Dix, 6 How. 507, 538, 12 L.Ed. 535; Withers v. Buckley, 20 How. 84, 90, 15 L.Ed. 816; Twitchell v. Commonwealth, 7 Wall. 321, 325–327, 19 L.Ed. 223; Davis v. State of Texas, 139 U.S. 651, 653, 11 S.Ct. 675, 35 L.Ed. 300; Talton v. Mayes, 163 U.S. 376, 382, 16 S.Ct. 986, 41 L.Ed. 196.

[10] Pacific States Box & Basket Co. v. White, 296 U.S. 176, 185, 56 S.Ct. 159, 80 L.Ed. 138, 101 A.L.R. 853; Newport News Shipbuilding & Dry Dock Co. v. Schauffler, 303 U.S. 54, 57, 58 S.Ct. 466, 82 L.Ed. 646; Alexander v. DeWitt, 9 Cir., 141 F.2d 573. See, also, Pennie v. Reis, 132 U.S. 464, 469, 470, 10 S.Ct. 149, 33 L.Ed. 426; Chicot County v. Sherwood, 148 U.S. 529, 536, 13 S.Ct. 695, 37 L.Ed. 546; Pearcy v. Stranahan, 205 U.S. 257, 263, 27 S.Ct. 545, 51 L.Ed. 793; Equitable Life Assur. Soc. v. Brown, 213 U.S. 25, 43, 29 S.Ct. 404, 53 L.Ed. 682; Southern R. Co. v. King, 217 U.S. 524, 534–537, 30 S.Ct. 594, 54 L.Ed. 868; Pierce Oil Corp. v. City of Hope, 248 U.S. 498, 500, 39 S.Ct. 172, 63 L.Ed. 381; St. Louis, K. & S. E. R. Co. v. United States, 267 U.S. 346, 349, 45 S.Ct. 245, 69 L.Ed. 649; Nortz v. United States, 294 U.S. 317, 324, 325, 55 S.Ct. 428, 79 L.Ed. 907, 95 A.L.R. 1346.

[11] See footnote 7.